UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EMMANUEL ANIM,                                           :
                                                         :
                Movant,      :        12 Civ. 3426 (KMW)
                                                         :        <u>Opinion & Order</u>
   -against-                                            :
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                Respondent.  :
------------------------------------------------------------X
KIMBA M. WOOD, United States District Judge:

      Emmanuel Anim ("Petitioner") moves, pursuant to 28 U.S.C. § 2255, for this Court to vacate, set aside, or correct his sentence on the grounds that both his trial counsel and appellate counsel rendered ineffective assistance. [Dkt. No. 7 ("Petition")]. On October 24, 2012, the Court granted Petitioner's request to proceed *in forma pauperis* and appointed counsel pursuant to 18 U.S.C. § 3006A(g). [Dkt. No. 10]. The Government filed its opposition on March 8, 2013, arguing primarily that the § 2255 Petition was procedurally barred by virtue of the waiver contained in Petitioner's plea agreement. [Dkt. No. 14]. Petitioner's appointed counsel filed a reply on May 15, 2013, arguing that Petitioner should be permitted to withdraw his guilty plea, or, in the alternative, be permitted to file a new appeal. [Dkt. No. 18].

      For the following reasons, Petitioner's motion pursuant to § 2255 is DENIED.

**I.    FACTUAL BACKGROUND**

    **A. Petitioner's Arrest and Indictment**

      On July 8, 2010, agents of the United States Diplomatic Secret Service obtained an arrest warrant for Ms. Faustina Djeagu, whom they suspected of obtaining a U.S. passport under a false name. The agents also obtained a warrant to search Ms. Djeagu's Bronx residence, which she

1

shared with Petitioner, her husband. (Decl. of U.S. Diplomatic Secret Service Officer Charles Harrison ("Harrison Decl.") ¶¶ 4, 6 [Dkt. No. 15]).

While executing the search warrant, the Secret Service agents asked Petitioner some basic questions. In response, Petitioner lied by telling the agents that his "name was 'Charlse Anim' and that 'Emmanuel Anim' had returned to Ghana many years ago." (Harrison Decl. ¶ 6). Petitioner subsequently admitted that his real name was Emmanuel Anim. (Id.). He also provided written consent for the agents to search the apartment for documents in his name. (See id. Ex. A). The agents recovered documents identifying Petitioner as "Charlse Anim," "Emmanuel Anim," and "Enoch Roberts."

The agents did not arrest Petitioner at that time. Instead, the Government arranged for Petitioner to be appointed counsel and to engage in a proffer in order to consider whether Petitioner would cooperate in investigating his cousin, who Petitioner had implicated in immigration fraud. Petitioner attended two proffer sessions—on August 13 and October 7, 2010—which were conducted under an agreement with the U.S. Attorney's Office for the Southern District of New York. The proffer agreement, which Petitioner signed, did not provide full immunity from prosecution. (Harrison Decl. ¶ 11).

The Government ultimately declined to offer Petitioner a cooperation agreement and instead issued a one-count Information, No. 11 Cr. 42 (KMW), charging Petitioner with knowingly procuring naturalization for himself based on false information, in violation of 18 U.S.C. § 1425(a). (Decl. of AUSA Serrin Turner ("Turner Decl.") Ex. A [Dkt. No. 16]).

### B. Petitioner's Plea Agreement

Before the Government filed the Information with the Court, Petitioner entered into a Plea Agreement with the Office of the United States Attorney for the Southern District of New York.

(Turner Decl. Ex. B ("Plea Agreement")).  In the Agreement, Petitioner agreed to plead guilty to violating 18 U.S.C. § 1425(a).  In exchange, the Government agreed not to further criminally prosecute Petitioner and to dismiss any outstanding charges.  (Plea Agreement 1).  The Parties also stipulated to the U.S. Sentencing Guidelines offense level, Petitioner's criminal history category, and a resulting Guidelines range of six to twelve months' imprisonment.  (Id. at 2).  The Parties agreed not to "[s]eek any departure or adjustment pursuant to the Guidelines," although each side was permitted to seek a sentence outside the stipulated Guidelines range based upon the factors listed in 18 U.S.C. § 3553(a).  (Id.).  The Agreement also made clear that, although the Parties stipulated to a Guidelines range, the Guidelines "are not binding on the Court," and the Court was authorized to impose any sentence "up to and including the statutory maximum."  (Id. at 3).

The Agreement repeatedly noted the immigration consequences of Petitioner's plea, and explained that "denaturalization is a mandatory consequence of conviction . . . , and thus upon conviction . . . the Court is required to revoke, set aside, and declare void the final order admitting the defendant to citizenship, and to declare the defendant's certificate of naturalization to be canceled."  (Id. at 1).  Moreover, in the Agreement, Petitioner acknowledged "that his guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences."  (Id. at 4).  Petitioner also stated that he had discussed these possible consequences with his attorney.  (Id.).

The Agreement included a waiver of Petitioner's appellate rights.  In the Agreement, the Parties agreed:

> that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under [28 U.S.C. § 2255 and/or § 2241];

>nor seek a sentence modification pursuant to [18 U.S.C. § 3582(c)], or any sentence within or below the Stipulated Guidelines Range of 6 to 12 months' imprisonment.

(Id. at 3). Petitioner further agreed that he "will not challenge his conviction or sentence on direct appeal, or through litigation under [28 U.S.C. § 2255 and/or § 2241], on the basis of any actual or perceived adverse immigration consequences (including denaturalization and deportation) resulting from [Petitioner's] guilty plea and conviction." (Id. at 4).

Petitioner and his attorney, Michael Hurwitz, Esq., executed the Plea Agreement on December 30, 2010. (Id. at 5).

### C. Petitioner's Guilty Plea

On January 13, 2011, Petitioner pled guilty before Magistrate Judge Debra C. Freeman pursuant to the Plea Agreement. Petitioner admitted to procuring U.S. naturalization for himself by knowingly providing false information. At the plea hearing, Judge Freeman confirmed the factual basis for the plea by asking Petitioner to explain his offense. Petitioner admitted that, in the early 1990s, he had unsuccessfully applied for asylum using his real name, Emmanuel Anim, and the real names of his wife and children. (Turner Decl. Ex. C, at 31 ("Plea Transcript")). Years later, Petitioner applied for naturalization. In order to not "[t]rigger [a] match" alerting authorities to his previous unsuccessful application, Petitioner used false names and birth dates for himself, his wife, and his children. (Id.). Petitioner admitted to deliberately using false names in order to try to improve his chances of obtaining naturalization. (Id. at 32-33). Petitioner's application was approved, and he became a naturalized citizen on July 25, 2008. (Id. at 29).

Judge Freeman found that Petitioner was competent to enter a guilty plea. (Id. at 15-18). She discussed the nature of the charges, the maximum applicable penalties, and the constitutional rights that Petitioner gave up by pleading guilty. (Id. at 18-24). Judge Freeman also explained

that mandatory deportation could be a consequence of his guilty plea; Petitioner states that he understood this. (Id. at 21-22).

Judge Freeman then asked Petitioner whether he had discussed the Plea Agreement with his attorney prior to signing it, and whether Petitioner's attorney had explained all of its terms and conditions to him; he answered in the affirmative to both questions. (Id. at 24-25). Petitioner stated that he understood that, under the terms of the Agreement, he agreed not to seek to withdraw his guilty plea based on any actual or perceived immigration consequences, including loss of citizenship or deportation. (Id. at 26). He also stated that he understood that he would not be permitted to challenge his conviction or sentence "either on direct appeal to the court of appeals or by any application to this court based on any immigration consequences." (Id. at 26-27). Finally, he stated that his decision to plead guilty was voluntary and of his own free will. (Id. at 27).

### D. Petitioner's Sentencing

On April 18, 2011, Petitioner and Ms. Djeagu appeared before this Court for sentencing. (Turner Decl. Ex. D ("Sentencing Transcript")). Petitioner was again represented by Mr. Hurwitz; Ms. Djeagu was represented by an attorney from the Federal Defenders. (Id. at 2). At sentencing, Petitioner's counsel confirmed that he and Petitioner had adequate opportunity to review the presentence report ("PSR"). (Id. at 3). Counsel then discussed his objections to the PSR with the Court. (Id. at 4-6). In advocating for a below-Guidelines sentence, counsel discussed Petitioner's offense conduct, background, education, employment history, and the difficulty that Petitioner's family would likely face following Petitioner's mandatory deportation. (Id. at 8-11). Counsel then answered questions from the Court. (Id. at 11-15).

The Court, after weighing the applicable 18 U.S.C. § 3553 factors, imposed a below-Guidelines sentence of three months imprisonment.  (Id. at 21).  At the conclusion of the sentencing, the Court asked Petitioner whether there was any part of the proceeding that he did not understand, to which Petitioner responded, "I have understood everything."  (Id. at 25).

### E. Petitioner's Appeal

On April 25, 2011, Petitioner filed a notice of appeal.  His counsel submitted an appellate brief pursuant to Anders v. California, 386 U.S. 738 (1967), explaining that, because Petitioner had validly waived his right to appeal in the Plea Agreement, there were "no non-frivolous issues for [appeal]."  (See Turner Decl. Ex. F).  Upon a motion from the Government, the Second Circuit summarily dismissed Petitioner's appeal on September 26, 2011.  (Id. ¶ 8).

### F. The Instant Petition

Petitioner served his three-month term of imprisonment and was released from custody on or about December 16, 2012.  (Turner Decl. ¶ 9).  On April 16, 2012, Petitioner filed the instant Petition asserting claims of ineffective assistance of trial counsel and appellate counsel.

## II. LEGAL STANDARDS

### A. Section 2255

A petition to vacate, set aside, or correct a sentence under § 2255 must allege that: "[1] the sentence was imposed in violation of the Constitution or laws of the United States; or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); see also Cuoco v. United States, 208 F.3d 27, 29 (2d Cir. 2000) (stating that relief under § 2255 is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or

an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice'" (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

It is within the district court's discretion to determine whether to hold an evidentiary hearing on a petitioner's § 2255 claim. See Bennett v. United States, No. 03 Civ. 1852, 2004 WL 2711064, at *3 (S.D.N.Y. Nov. 23, 2004) (Scheindlin, J.). "While a court should not summarily dismiss a case unless it is clearly bereft of merit, an evidentiary hearing is not needed in every case." Castillo v. United States, No. 07 Civ. 2976, 2010 WL 3912788, at *2 (S.D.N.Y. Sept. 8, 2010) (Wood, J.) (citing Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001)). In order to obtain a hearing, "a petitioner 'must demonstrate a colorable claim,' and the court must evaluate whether a hearing would 'offer any reasonable chance of altering its view of the facts.'" Bennett, 2004 WL 2711064, at *3 (quoting Chang, 250 F.3d at 84, 86).

### B.  Waiver of Appellate Rights

The Second Circuit has routinely held that waivers of appellate rights in a plea agreement are valid and enforceable. See, e.g., United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008). The rights that can be waived include "collateral attack rights," such as the right to challenge a conviction pursuant to § 2255. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir.2001) (per curiam).

The Second Circuit has narrowly cabined the circumstances under which appellate waivers are not enforceable. The exceptions include situations:

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence.

United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (internal citations omitted). When asserting a claim for ineffective assistance of counsel during the plea agreement process, "the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards."  Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted); see also Brizard v. United States, No. 11 Civ. 6033, 2013 WL 1809636, at *3 (S.D.N.Y. Apr. 30, 2013) (Kaplan, J.); Garafola v. United States, No. 09 Civ. 10280, 2012 WL 6622684, at *6-7 (S.D.N.Y. Dec. 20, 2012) (Koeltl, J.).

### C. Ineffective Assistance of Counsel

Courts evaluate a claim of ineffective assistance of counsel under the framework established in Strickland v. Washington, 466 U.S. 668 (1984); see also Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (applying Strickland to guilty pleas).  Under Strickland, the petitioner must show that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced petitioner's case.  See Strickland, 466 U.S. at 687; Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).  With respect to the deficiency prong, the petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).  In the context of a guilty plea, to meet the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for the challenged ineffective assistance, he would not have pleaded guilty and would have insisted on going to trial."  Brizard v. United States, No. 11 Civ. 6033, 2013 WL 1809636, at *4 (S.D.N.Y. Apr. 30, 2013) (Kaplan, J.).

### III.  ANALYSIS

Petitioner's arguments fall into two broad categories: (A) ineffective assistance of trial counsel, and (B) ineffective assistance of appellate counsel.   Petitioner argues that his trial counsel rendered ineffective assistance by: (1) failing to advise Petitioner of the immigration consequences of his guilty plea; (2) failing to challenge the search and seizure that led to the recovery of incriminating evidence within Petitioner's Bronx residence; (3) failing, after the plea but prior to sentencing, to withdraw Petitioner's guilty plea despite Petitioner's requests to do so; and (4) permitting Petitioner to speak with federal prosecutors without a grant of immunity.  (Petition ¶¶ 4, 6-7, 8, 10).   Petitioner argues that his appellate counsel rendered ineffective assistance by "failing to respond to the government's motion to dismiss or to file a brief, thereby, causing my appeal to be dismissed."   (Id. ¶ 12).

The Court finds that Petitioner's arguments lack merit.

**A) Ineffective Assistance of Trial Counsel**

As an initial matter, to the extent that Petitioner raises claims relating to events other than the plea agreement process—such as the search of his Bronx residence, his proffer sessions with the U.S. Attorney's office, or the attempted withdrawal of his plea—these claims are barred by the appellate waiver.   See Parisi, 529 F.3d at 138 ("Everything that occurs prior to a guilty plea or entry into a plea agreement informs the defendant's decision to accept or reject the agreement. An ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns 'the advice [the defendant] received from counsel.'" (emphasis added)); see also Gomez-Perez, 215 F.3d at 319 (limiting the circumstances when appellate waiver will not be

enforced to, in relevant part, "when the waiver was not made knowingly, voluntarily, and competently").[1]

Petitioner does raise some arguments that are not procedurally barred by the waiver provision. Most importantly, Petitioner argues that his plea was not knowing and voluntary because his counsel failed to advise Petitioner of the immigration consequences of his guilty plea. This argument relates to the negotiation and entry of the plea, and therefore may proceed despite the waiver. See Parisi, 529 F.3d at 138.

Nevertheless, the Court concludes that Petitioner has failed to carry his burden to establish ineffective assistance. The evidence shows that Petitioner was fully aware of the immigration consequences of his plea. The Plea Agreement repeatedly explained the likely immigration consequences, including specifying that "denaturalization is a mandatory consequence of conviction" and that deportation was likely mandatory (or at least a serious risk). (Plea Agreement 1, 4). Moreover, when pleading guilty pursuant to the Agreement, Petitioner agreed not to withdraw his plea "regardless of any immigration consequences that may result." (Id. at 4). At the plea hearing, Petitioner confirmed that he had reviewed the Plea Agreement with counsel, understood its contents, and consented to its terms. He stated that he understood deportation would likely be a mandatory result of his conviction, but nevertheless chose to waive his right to challenge his conviction or sentence "either on direct appeal to the court of appeals or by any

---

[1] These three claims also fail on their merits, because Petitioner has failed to establish any deficient performance by counsel or prejudice to his case. First, the Government has submitted evidence that Petitioner consented to the search of his apartment. (See Harrison Decl. ¶ 6 & Ex. A). Second, the Government has submitted evidence that Petitioner's proffers were conducted under a standard proffer agreement, which does not include full immunity. Third, Petitioner was afforded the opportunity to speak at his sentencing and chose not to raise the issue of withdrawing his guilty plea. (See Sentencing Tr. 15). A "defendant has no absolute right to withdraw his plea of guilty." United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994).

application to this court based on any immigration consequences." (Plea Transcript 21-22, 26-27).

Given the clarity of the record on this question, the Court does not accept Petitioner's new claims that he did not understand the terms of the Agreement and was unaware of the immigration consequences of his plea. See Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding."). To grant the Petition on these grounds would permit Petitioner "to reap the benefits of a plea agreement while escaping the consequences of a valid, bargained for agreement [and] would render the plea bargaining process and the resulting agreement meaningless." Bellettieri v. United States, No. 11 Civ. 7617, 2012 WL 6097771, at *3 (S.D.N.Y. Dec. 4, 2012) (Preska, C.J.) (quoting United States v. Monzon, 359 F.3d 110, 117 (2d Cir. 2004) (internal quotation marks omitted)).[2]

### B) Ineffective Assistance of Appellate Counsel

Petitioner's claim of ineffective assistance of appellate counsel is equally unavailing. Petitioner claims that he instructed his attorney to file an appeal contending that his plea was not knowing and voluntary and that Petitioner was not advised of the immigration consequences of his plea. It is well established—even where a defendant waives his appellate rights—that counsel's failure to file an appeal or failure to file an adequate appellate brief may constitute ineffective assistance. See Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006). In this case,

---

[2] Nor is there any merit to Petitioner's claim that his plea was involuntary because he believed he would be given immunity and would not suffer any naturalization problems. (Reply Br. 1-2). The Court has already established Petitioner's full understanding of the potential immigration consequences of his plea. Moreover, although Petitioner initially attended proffer sessions with the Government, the proffer agreement, which Petitioner signed, did not provide for full immunity. (Harrison Decl. ¶ 11). The Plea Agreement and Judge Freeman's plea allocution firmly establish that Petitioner could not have reasonably have misunderstood that he was receiving immunity.

however, Petitioner's appellate counsel did file an appellate brief.  Counsel's <u>Anders</u> brief explicitly noted that Magistrate Judge Freeman and this Court had properly inquired into the voluntariness of Petitioner's plea.  Counsel's representation was not ineffective, but merely concluded that there was no non-frivolous basis for Petitioner's appeal.  See <u>Jorge v. United States</u>, 818 F. Supp. 55, 57 (S.D.N.Y. 1993) (Sprizzo, J.) ("The filing of an <u>Anders</u> brief does not in itself constitute ineffective assistance of counsel." (citing <u>McCoy v. Court of Appeals of Wisc. Dist. 1</u>, 486 U.S. 429, 442-44 (1988))).  This Court's review of the record supports counsel's conclusion.

## IV.	CONCLUSION

For the reasons discussed above, Petitioner's motion is DENIED.  Because the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253.  This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

SO ORDERED:

Dated: New York, New York
       August 12 , 2013

/s/_____
       KIMBA M. WOOD
       United States District Judge